848 F.2d 188
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ABDE's BLACK ANGUS STEAK HOUSE, INC., Plaintiff,
Mid-American Bank, Plaintiff-Appellee, Cross-Appellant,
v.
GREAT CENTRAL INSURANCE COMPANY, Defendant-Appellant, Cross-Appellee.
 Nos. 87-3081, 87-3106.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1988.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this diversity action for recovery on an insurance policy, defendant, Great Central Insurance Company, appeals from the judgment, entered by the District Court for the Northern District of Ohio following a trial to the court, for plaintiff, Mid-American Bank. Mid-American cross-appeals from the amount awarded it for prejudgment interest.
 
 
 2
 The action was initiated by a complaint filed jointly by Mid-American and ABDE's Black Angus Steak House, Inc., seeking recovery under a policy of fire insurance issued on April 15, 1981 to ABDE by Great Central, and insuring furniture, business fixtures and other personal property in ABDE's restaurant which was located in leased premises. On May 21, 1981, an employee of the Danberry Insurance Agency, the agency that had sold the policy, requested Great Central to add to the policy, as a "mortgagee," Farmers Savings Bank, which had made loans to ABDE. An underwriter for Great Central, a Mr. Carlson, crossed out the words "add mortgagee" on the request and inserted "loss payable," and an endorsement was issued adding Farmers as a loss payee.
 
 
 3
 In July, ABDE refinanced its loans with Mid-American, paying off the loans from Farmers with a portion of the proceeds. The agency then asked Great Central to add Mid-American as "first mortgagee." This time, the underwriter approved the request and a policy endorsement was issued listing Mid-American as "mortgagee."
 
 
 4
 The security agreement signed by ABDE required it to maintain insurance "with standard mortgage clauses in favor of Mid-Am," and listed as security the furniture, business fixtures and other personal property in the restaurant. However, neither ABDE nor Mid-American had any direct communication with Great Central concerning whether Mid-American was to be added to the policy as a loss payee or as a mortgagee.
 
 
 5
 The policy was later renewed, again listing Mid-American as mortgagee. In July 1982, a fire destroyed the restaurant and its contents. Great Central denied ABDE's claim under the policy on the ground that the fire had been set by an agent of ABDE, and then denied Mid-American's claim for the reason that its rights under a loss payable clause could be no greater than those of the named insured.
 
 
 6
 The district court separated the claims of the plaintiffs for trial, and Great Central's defense against ABDE was upheld by a jury. Mid-American's claim then proceeded to trial before the district judge.
 
 
 7
 The dispute between Mid-American and Great Central centered around whether or not Mid-American was a "mortgagee" entitled to the benefit of the "standard mortgage clause" found in the policy since, if it were, then it could recover regardless of the insured's conduct. However, if Mid-American were not entitled to rely upon that clause, but, instead, was to be treated as a mere loss payee, then its rights to recover would be no greater than those of the insured. The policy language at issue follows:
 
 
 8
 19. Mortgage Clause--Applicable Only To Buildings: This clause is effective if a mortgagee is named in the Declarations. The word "mortgagee" includes "trustee". Loss to buildings shall be payable to the named mortgagee as interest may appear, under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them.
 
 
 9
 As it applies to the interest of any mortgagee designated in the Declarations, this insurance shall not be affected by any of the following:
 
 
 10
 (a) any act or neglect of the mortgagor or owner of the described buildings;
 
 
 11
 Great Central maintained that the clear language of the policy specifically prevented Mid-American from claiming the benefit of the standard mortgage clause since, by its own terms, it was applicable only to a building loss, and not to a contents loss.
 
 
 12
 However, the district court found that the policy's provisions were confusing and that, under Ohio law, uncertain and ambiguous language in policies of insurance is to be construed favorably to the insured, with the result that Mid-American should recover. The district court noted that, while the standard mortgage clause initially suggested it applied only to "buildings," it specifically was said to apply to a mortgagee named in the policy's declarations, and Mid-American was so named. The court further noted that Mid-American had clearly expected to be added to the policy as a mortgagee, and that Great Central was aware of that expectation. Since the clearly established intent of Mid-American had been conveyed to Great Central, the court considered that the ambiguity in the language of the policy, as issued, should be construed in Mid-American's favor.
 
 
 13
 We have thoroughly reviewed the record and conclude that the district court was warranted in entering judgment for Mid-American, and adopt its stated reasoning for arriving at that result.
 
 
 14
 In its cross-appeal, Mid-American contends that the district court erred in failing to grant it prejudgment interest for the period following the fire at the rate of eighteen and one-half percent set out in the note signed by ABDE, but, instead, allowed prejudgment interest for that period at the Ohio statutory rate of ten percent. The applicable Ohio statute reads as follows:
 
 
 15
 [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, ... and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
 
 
 16
 Ohio Rev.Code Ann. Sec. 1343(A) (Anderson Supp.1986).
 
 
 17
 The district court's computations show that it first calculated the balance due on ABDE's loan from Mid-American on the date of the fire, including both principal and interest at the rate specified in the note, apparently under the theory that this was the amount of Mid-American's "interest" in the destroyed property at the time of the loss. The court then awarded prejudgment interest until the date of the judgment at ten percent.
 
 
 18
 Mid-American contends that the mortgagee clause in the policy of insurance is a "written contract" between Mid-American and Great Central, within the contemplation of the statute, and provides for the "different rate of interest" to which Mid-American is entitled.
 
 
 19
 Obviously, Mid-American cannot rely upon the note itself since that document evidenced a loan agreement between Mid-American and ABDE. Nor did the policy of insurance specify a particular rate of interest to be paid an insured on amounts payable under the policy. Mid-American did not sue ABDE on the note; it sued Great Central on the policy. In its policy of insurance, Great Central undertook only to pay for the value of the insured property at the time of loss, and to pay from that amount to Mid-American the portion that represented its insurable interest, which was the result of the security interest it held in the property. The district court correctly concluded that the proper measure of Mid-American's insurable interest in the property which had secured the payment of its loan to ABDE, was the amount due Mid-American from ABDE, on the note, at the date of the loss.
 
 
 20
 The cross-appeal is not well-taken, and the district court's computation of the award due Mid-American is affirmed.
 
 
 21
 The judgment of the district court is affirmed.